**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| BIGFOOT CO-OP A INC., d/b/a MADISON AVENUE APARTMENTS and PHG INC. d/b/a PINNACLE ROOFING, | No. 23-CV-1016-CJW-MAR |
| Plaintiffs, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

I.    PROCEDURAL HISTORY ................................................................ 3

II.   DEFENDANT'S MOTION TO DISMISS.............................................. 5

      A.    Factual History .................................................................... 5

      B.    Motion to Dismiss Standard ................................................... 6

      C.    Analysis.............................................................................. 7

            1.    Plaintiffs' Unfair Settlement Practices Claim ......................... 7

            2.    Plaintiffs' Fraud Claim .................................................. 11

      D.    Summation of Motion to Dismiss ........................................... 14

III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT...................... 14

A.       Factual History ...................................................................14

       1.      The Policy.................................................................14

       2.      The Storm and the Claim................................................15

B.       Summary Judgment Standard ...................................................18

C.       Analysis..........................................................................19

       1.      Substantial Compliance with Notice Provision ......................21

       2.      Prejudice to Defendant.................................................24

D.       Summation of Motion for Summary Judgment...............................26

IV.    CONCLUSION ...................................................................26

This matter is before the Court on two motions by defendant. The first motion before the Court is defendant's motion for summary judgment. (Doc. 27). Plaintiffs filed a resistance to defendant's motion for summary judgment. (Docs. 40 & 40-1). Defendant filed a reply. (Doc. 60).

The second motion before the Court is defendant's motion to dismiss. (Doc. 62). Plaintiffs filed a resistance. (Doc. 65). Defendant filed a reply. (Doc. 69).

For the following reasons, the Court **grants** defendant's motion for summary judgment. The Court also **grants** defendant's motion to dismiss.

## I.    *PROCEDURAL HISTORY*

On July 21, 2023, plaintiff Bigfoot Co-Op A Inc. ("Bigfoot") filed a petition in the Iowa District Court for Dubuque County, claiming breach of contract and insurance bad faith against defendant. (Doc. 4). The petition included the allegation, apparently mistakenly, that a storm damaged Bigfoot's "hog nursery." (*Id.*, at 1). The parties agree that this case is about damage to an apartment complex and other buildings, not a hog nursery.

On August 17, 2023, defendant removed the case to this Court based on diversity of citizenship jurisdiction. (Doc. 1). On September 19, 2023, defendant filed an answer to Bigfoot's petition. (Doc. 11). On December 14, 2023, defendant filed an amended answer to Bigfoot's petition. (Doc. 22).

On March 1, 2024, defendant filed a motion for judgment on the pleadings based on the "hog nursery" issue with the petition. (Doc. 26). On March 20, 2024, Bigfoot, who was the sole plaintiff at the time, filed an amended complaint fixing the pleading error by specifying the properties at issue and omitting the hog nursery language. (Doc. 38). Bigfoot also amended its complaint in a more substantive way. The amended complaint continues to include a claim of breach of contract, but omits the insurance bad faith claim. The amended complaint also includes two new causes of action against

defendant: one for noncompliance with the Iowa Insurance Code for unfair settlement practices, and another for common law fraud. (*Id.*, at 4–6). Thus, the amended complaint includes three causes of action: (1) breach of contract, (2) noncompliance with the Iowa Insurance Code amounting to unfair settlement practices, and (3) common law fraud. (*Id.*).

On March 21, 2024, the Court filed an order denying as moot defendant's motion for judgment on the pleadings because of Bigfoot's amendment to the complaint. (Doc. 39). On April 3, 2024, defendant filed an answer to the amended complaint. (Doc. 43).

On March 1, 2024, before Bigfoot had amended its complaint, defendant filed a motion for summary judgment. (Doc. 27). On March 22, 2024, Bigfoot filed a resistance to defendant's motion for summary judgment. (Doc. 40). On May 30, 2024, defendant filed a reply. (Doc. 60).

On May 21, 2024, plaintiffs filed an amended complaint, adding PHG, Inc. ("Pinnacle") as a second plaintiff. (Doc. 56). The addition of Pinnacle as a plaintiff appears to be the result of a possible assignment of claims by Bigfoot to Pinnacle at some point. Defendant filed an answer. (Doc. 61). These are the operative pleadings at this stage in the litigation.

On June 4, 2024, defendant filed a motion to dismiss plaintiffs' complaint. (Doc. 62). Defendant's motion covers plaintiffs' unfair settlement practices claim and plaintiffs' fraud claim. (*Id.*). Plaintiffs filed a resistance to defendant's motion to dismiss. (Doc. 65). Defendant filed a reply. (Doc. 69).

Defendant's pending summary judgment motion challenges plaintiffs' breach of contract claim.[1]

_____

[1] Defendant's motion for summary judgment also challenges the bad faith claim in the original complaint. As noted above, after defendant's summary judgment motion, plaintiffs filed an amended complaint, and subsequently a second amended complaint, which abandon the bad faith

## II.    DEFENDANT'S MOTION TO DISMISS

### A.    Factual History

The facts for the purposes of defendant's motion to dismiss come from the facts pled by plaintiffs in the second amended complaint. (*See* Doc. 56). Bigfoot owns several properties with buildings on them in Dubuque, Iowa. The properties are covered by an insurance policy issued by defendant. On August 9, 2021, the properties suffered a covered loss due to a wind and hail storm. Bigfoot, the insured, submitted a claim to defendant, the insurer, under the policy for damages the properties sustained from the storm. Bigfoot alleges that it asked defendant to cover the cost of repairs to the property on April 17, 2023.

On June 12, 2023, Bigfoot's public adjuster inspected the properties and determined the properties had incurred an estimated $5,764,091.75 in damage from the storm.

On June 19, 2023, defendant sent a letter to Bigfoot stating that defendant had received a sworn proof of loss from Bigfoot's public adjuster, and that defendant required additional time to complete an investigation of the claim.

On July 21, 2023, Bigfoot filed this lawsuit against defendant. At the time Bigfoot filed suit, defendant had not notified Bigfoot whether defendant had accepted or denied the claim. Defendant had also not made any payments to Bigfoot on the claim.

On February 16, 2023, after the alleged damage to the properties occurred, but before any of the other events described above occurred, Bigfoot "executed an Assignment of Claim Benefits" to Pinnacle. (*Id.*, at 2).

---

claim. Thus, for the purposes of defendant's summary judgment motion, the only relevant claim is the breach of contract claim.

## B.     Motion to Dismiss Standard

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).[2]  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (further citation omitted).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "The Court must also grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487, at *2 (N.D. Iowa Sept. 21, 2023) (quotations

---

[2] The Court notes that defendant filed an answer to plaintiffs' second amended complaint before defendant filed this motion to dismiss.  (*See* Docs. 61 & 62).  When a party files a motion to dismiss after filing an answer, a court can "view it as a motion for judgment on the pleadings" under Federal Rule of Civil Procedure 12(c). *St. Paul Ramsey Cnty. Med. Ctr. v. Pennington Cnty.*, 857 F.2d 1185, 1187 (8th Cir. 1988).  "A defense of failure to state a claim may be raised in such a motion" and courts "employ the same standard that we would have employed had the motion been brought under Rule 12(b)(6)." *Id.*  Thus, the Court will treat defendant's motion as a motion for judgment on the pleadings.  For consistency with the parties' arguments and because the standard is the same, however, the Court will refer to defendant's motion throughout this order as a motion to dismiss.

and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

### C. Analysis

Plaintiffs bring three causes of action against defendant in their second amended complaint: (1) breach of contract, (2) unfair settlement practices, and (3) fraud. (Doc. 56, at 4–6). Defendant moves to dismiss plaintiffs' unfair settlement practices claim and plaintiffs' fraud claim under Rule 12(b)(6). (Doc. 62-1). The Court will discuss the two claims in turn.

### 1. Plaintiffs' Unfair Settlement Practices Claim

Plaintiffs label this claim "noncompliance with Iowa insurance code: unfair settlement practices." (Doc. 56, at 4). Plaintiffs allege that defendant's conduct "constitutes a violation of [Iowa Code Section 507B.4(3)(j)]." (*Id.*).[3] Subsection 507B.4(3)(j) includes fifteen actions which, when performed with a certain level of frequency, constitute unfair claim settlement practices. For example, subsection 507B.4(3)(j)(2) lists "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." Plaintiffs

---

[3] Plaintiffs cite to Iowa Code Section 507B.4(1)(j) throughout the second amended complaint and throughout their briefing. Plaintiffs likely intend to cite to Iowa Code Section 507B.4(3)(j), a subsection entitled "unfair claim settlement practices," as there is no Section 507B.4(1)(j). The Court will proceed under this assumption.

specifically cite Sections 507B.4(3)(j)(2), (3), (4), (6), and (7) as the subsections defendant violated. (Docs. 56, at 4–5; 65, at 3).

Defendant argues Chapter 507B does not provide a private cause of action. (Doc. 62-1, at 3–4). Instead, defendant argues, Chapter 507B is "essentially regulatory in nature" and "intended only to provide the state insurance commissioner with administrative enforcement powers." (*Id.*). Defendant cites to various authority standing for the proposition that Chapter 507B does not provide a private cause of action. (*Id.*). Defendant reasons that, because a private litigant cannot bring a claim under Chapter 507B, the Court must dismiss this claim.

Plaintiffs argue that the Iowa Supreme Court case defendant principally relies on analyzed whether a private cause of action exists under a different subsection of Chapter 507B, and thus that case is distinguishable from plaintiffs' claim here. (Doc. 65, at 3–4). Plaintiffs emphasize that the analysis in the case has not been applied to the subsections plaintiffs bring their claim under. Plaintiffs therefore argue that they have the right to bring a private cause of action under the specific subsections listed in their complaint. (*Id.*).

Defendant principally relies on *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35 (Iowa 1982). In *Seeman*, the Iowa Supreme Court considered whether a subsection of Iowa Code Chapter 507B creates a private cause of action. The subsection, which at that time was Section 507B.4(9)(f), provided: "Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following: . . . Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *Seeman*, 322 N.W.2d at 36. The court held that the section does not provide a private cause of action. *See id.* at 43. The *Seeman* court's main reasoning was that, in enacting Chapter 507B, the Iowa legislature "intended only to invest the insurance

commissioner with administrative enforcement powers and that the chapter not be expanded in the exercise of administrative or judicial discretion." *Id.* at 42. The court also relied on the "declaration of purpose" specified in the first section of Chapter 507B:

> "The purpose of this chapter is to *regulate* trade *practices* in the business of insurance . . . by defining, or providing for the determination of, all such *practices* in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined."

*Id.* (quoting Iowa Code § 507B.1 (1981)) (emphasis added by *Seeman* court). The declaration of purpose contained in the statute today is unchanged from the version relied upon in *Seeman*. *See* Iowa Code § 507B.1 (2024). Ultimately, the court held that the legislature "intended the insurance commissioner's powers to be the exclusive means of enforcing" the subsection at issue. *Seeman*, 322 N.W.2d at 42. That is, the statute was designed to be enforced by the insurance commissioner, and not to create a private right of action.

Plaintiffs attempt to distinguish *Seeman* by noting they bring their claim under different subsections than the subsection analyzed in *Seeman*. (Doc. 65, at 3–4). This argument has at least two insurmountable flaws. First, the *Seeman* court consistently discusses the issue under Chapter 507B, Section 507B.4, and subsection 507B.4(9). For example, the court states that "chapter 507B is essentially regulatory in nature." *Seeman*, 322 N.W.2d at 42. These references show that the court's analysis was applicable to more than just the subsection at issue in the case. Second, although plaintiffs argue that they "have alleged no claims for relief under this particular statute, but rather the statutes listed above"—i.e., subsections 507B.4(3)(j)(2), (3), (4), (6), and (7)—one of these subsections is, in fact, the same as the subsection discussed in *Seeman*. What is now Section 507B.4(3)(j)(6) provides: "Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the

following: . . . Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear[.]"  This is the same language analyzed in *Seeman*—the only difference, other than the comma after the word "fair," is that it is now codified under a different subsection.  *See Seeman*, 322 N.W.2d at 36; *Nsheiwat v. Am. Fam. Mut. Ins. Co.*, No. 3:21-cv-00068-JAJ-SBJ, 2021 WL 8895035, at *3 (S.D. Iowa Nov. 22, 2021) (noting that "[former] Iowa Code § 507B.4(9)" is "now Iowa Code § 507B.4(3)(j)").  Thus, plaintiffs here do attempt to bring a claim for relief under the same language which was at issue in *Seeman*.

Other authority provides support for the conclusion that Chapter 507B does not create a private cause of action.  In *Bates v. Allied Mutual Insurance Co.*, 467 N.W.2d 255 (Iowa 1991), the Iowa Supreme Court again held that Chapter 507B does not create a private cause of action.  The *Bates* court was even more explicit than the *Seeman* court in holding that the whole chapter, as opposed to only the subsection at issue in *Seeman*, does not create a private cause of action.  *See id.* at 260 ("In fact, our analysis in *Seeman* is very explicit in indicating that the intention of chapter 507B is not to create a private cause of action.").  Federal courts have followed *Seeman* and *Bates*.  *See Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 990 F. Supp. 679, 688 (N.D. Iowa 1997) (concluding that Iowa Code Chapter 507B "does not create a private cause of action for an insured, or anyone else, against an insurer"); *Nsheiwat*, 2021 WL 8895035, at *3 ("It is plain from *Seeman* and *Bates* that there is no private cause of action for a violation of § 507B.4."); *Lisette Enters., Ltd. v. Regent Ins. Co.*, 537 F. Supp. 3d 1038, 1050 n.6 (S.D. Iowa 2021) ("Iowa courts have long held that chapter 507B does not give rise to a private cause of action, precluding a plausible claim for relief.").  Iowa courts and courts interpreting Iowa law have been consistent on this issue; there is no independent private cause of action created by Iowa Code Chapter 507B.

Because Iowa Code Section 507B.4 does not create a private cause of action, plaintiffs cannot make a claim under the section. Thus, defendant's motion to dismiss plaintiffs' unfair settlement practices claim is **granted**.

## 2. *Plaintiffs' Fraud Claim*

The third claim in plaintiffs' second amended complaint is for fraud. (Doc. 56, at 5–6). Plaintiffs point to paragraphs 17 and 18 of the pleading as the conduct constituting defendant's fraud. (Docs. 56, at 3; 65, at 4–5). Plaintiffs allege that defendant issued Bigfoot a letter on June 19, 2023, recognizing a sworn proof of loss submitted by plaintiffs' public adjuster. (Doc. 56, at 3). In the letter, defendant also allegedly stated that it "required additional time to complete its investigation into the claim." (*Id.*). Defendant allegedly never sent plaintiffs or their representatives any documentation stating whether defendant had accepted or denied plaintiffs' claim. (*Id.*). Defendant apparently has still not provided plaintiffs with a determination of the claim and has not paid plaintiffs any money for the claim. Plaintiffs base their argument on these facts, arguing that defendant's "avoiding a determination on the claim while at the same time refusing to tender payment" to plaintiffs for any covered damages constitutes fraud. (Doc. 65, at 4–5).

Defendant argues that plaintiffs have only made conclusory statements in pleading their fraud claim. (Doc. 62-1, at 4–6). Defendant further argues that the federal rules of civil procedure require a party claiming fraud to plead it with particularity, and that plaintiffs have not done so here. (*Id.*). Defendant also argues that plaintiffs' allegations in the complaint fail to satisfy several elements of a fraud claim.

Plaintiffs' claim here is one for fraudulent misrepresentation. In Iowa, fraudulent misrepresentation requires proof of the following elements: "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent [to deceive]; (6) justifiable reliance; and (7) resulting injury." *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005); *see also*

*McGough v. Gabus*, 526 N.W.2d 328, 331 (Iowa 1995). Scienter means "knowledge of the falsity of a material representation[.]" *McGough*, 526 N.W.2d at 331.

The federal rules of civil procedure include a heightened pleading standard for fraud claims. Specifically, when a party is alleging fraud, the party "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Excepted from this heightened standard is "malice, intent, knowledge, and other conditions of a person's mind" which "may be alleged generally." *Id.* Put another way, when making a claim of fraud, a party must plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *Great Plains Tr. Co. v. Union Pac. R.R.*, 492 F.3d 986, 995 (8th Cir. 2007) (citation omitted). The Court "need not accept conclusory legal allegations as true." *Id.* "[O]ne of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud[.]" *Com. Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995). Thus, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]." *Id.*

Plaintiffs' allegations fall far short of the pleading standard for fraud claims. Plaintiffs allege that defendant sent Bigfoot a letter confirming defendant's receipt of plaintiffs' sworn proof of loss and stating that defendant needed additional time to complete an investigation of plaintiffs' claim. (Doc. 56, at 3). Defendant then allegedly never sent plaintiffs any documents stating whether defendant had accepted or denied plaintiffs' claim. (*Id.*). Defendant has apparently still not paid plaintiffs anything on the claim. (*Id.*). Later statements in plaintiffs' complaint are conclusory statements covering the elements of fraud. For example, plaintiffs allege that defendant's "statements were made with the intention that they should be acted upon by Plaintiffs, who in turn acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury and constituting common law fraud." (*Id.*, at 6).

First, plaintiffs must plead that there was a representation. The only representation plaintiffs point to is the letter stating that defendant received a sworn proof of loss and that defendant needed more time to investigate the claim. The second element is falsity. Plaintiffs do not appear to claim that the letter included false information. Defendant stated that it needed more time to investigate, and then did not communicate further with plaintiffs for another month, when plaintiffs filed this suit. It is unclear what information in the letter is allegedly false. The next element is materiality, which the Court will assume without deciding is satisfied here for the purposes of this motion. Another element is scienter, or defendant's knowledge of the falsity of the representation. Again, plaintiffs have not pointed to falsity anywhere, so it is also unclear how defendant would have known its statement was false.

Another element of a fraud claim is intent to deceive on the part of defendant. Plaintiffs state that defendant intended to deceive plaintiffs in order to induce plaintiffs to "accept a denial and/or underpayment of insurance benefits." (Doc. 56, at 6). Although this element does not fall within the heightened pleading standard of Rule 9(b), it is again unclear to the Court how the letter was an attempt to get plaintiffs to accept less money on plaintiffs' claim. The letter stated that defendant needed time to investigate. The Court does not see how asking for time to investigate a claim plausibly leads to an intent to deceive plaintiffs.

The final two elements are justifiable reliance and resulting injury. There is simply no allegation of reliance by plaintiffs here. Plaintiffs allege that they "relied upon said statements in accepting the denial and/or underpayment of the claims, and suffered injury as a result." (*Id.*, at 6). But defendant does not appear to have denied plaintiffs' claim, and there is no allegation that defendant tried to underpay plaintiffs here. Defendant simply never got back to plaintiffs before they filed suit. (*Id.*, at 5). Further, plaintiffs did not accept any denial or underpayment—they filed suit before any denial or

underpayment came.  Finally, there does not appear to be any resulting injury here.  The resulting injury in a fraudulent misrepresentation claim must come from the misrepresentation and reliance upon it, not from the denial of the underlying insurance claim.  It is not clear what that injury would be here.

In short, plaintiffs' fraud claim simply does not fit these facts.  Even under a regular pleading standard the fraud claim would not stand.  Under the heightened pleading standard of Rule 9(b), plaintiffs' fraud claim certainly does not stand.  Plaintiffs' claim, at base, is that defendant undervalued their insurance claim, or at least delayed paying plaintiffs for the damage to the properties.  Fraud simply does not fit the factual allegations here—it is the square peg trying to fit into a round hole.  Thus, defendant's motion to dismiss plaintiffs' fraud claim is **granted**.

### D.    *Summation of Motion to Dismiss*

For the reasons stated above, defendant's motion to dismiss is **granted**.  Thus, plaintiffs' unfair settlement practices and fraud claims are both **dismissed**.

### III.    *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Defendant filed a motion for summary judgment on plaintiffs' breach of contract and insurance bad faith claims.  (Doc. 27).  Plaintiffs dropped the insurance bad faith claim in their second amended complaint, (Doc. 56), and therefore this summary judgment contest solely concerns plaintiffs' breach of contract claim.

### A.    *Factual History*

The following facts are undisputed unless otherwise noted.  The Court will consider additional facts as they become relevant to its analysis.

### 1.    *The Policy*

Defendant issued a commercial property insurance policy to Bigfoot with the policy period running from December 20, 2020, to December 20, 2021.  (Doc. 27-2, at 1).  The policy provides coverage for certain commercial property damage.  (*Id.*).  The

policy also includes clauses specifying the duties of the parties, and limits on legal action. Specifically, the policy provides:

> **3.** **Duties In The Event of Loss or Damage**
>   **a.** You must see that the following are done in the event of loss or damage to Covered Property:
>   . . .
>     **(2)** Give us prompt notice of the loss or damage.  Include a description of the property involved.
>     **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

(*Id.*).  The policy also provides:

> **D.** **LEGAL ACTION AGAINST US**
>   No one may bring a legal action against us under this Coverage Part unless:
>   1. There has been full compliance with all of the terms of this Coverage Part; and
>   2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(*Id.*, at 2; Doc. 27-3, at 50).  In the clauses excerpted above, "you" refers to plaintiffs, and "us" refers to defendant.  (Doc. 27-3, at 34).

### 2. *The Storm and the Claim*

On August 9 or 10, 2021, a storm apparently damaged plaintiffs' property which was covered under the insurance policy.[4]  Specifically, plaintiffs claim they "suffered a covered cause of loss to the insured property from wind and hail."  (Doc. 40-1, at 2).

---

[4] Neither party includes this fact in their statement of facts.  Both parties appear to accept it as true, however, at least for the purposes of the summary judgment motion.  (*See* Docs. 27-1, at 2; & 40-1, at 2).  The parties use the date of August 9, 2021, as the date of the storm in their briefing, but plaintiffs' sworn proof of loss lists August 10, 2021, as the date of loss.  (*Compare* Docs. 27-1, at 2; & 40-1, at 2; *with* Doc. 27-3, at 78).  The amended complaint also lists August 9, 2021, as the date of the alleged loss.  (Doc. 38, at 2).  The discrepancy is immaterial to the ultimate analysis here.

Bigfoot provided notice of the alleged loss to defendant "on or about April 1, 2023" when it filed a claim with defendant. (Docs. 27-2, at 2; 27-3, at 78; 40-3, at 1).

Plaintiffs claim they "corresponded with agent, Julie Bray, consistently between the date of loss and the date [d]efendant was notified of the claim in an attempt to receive the appropriate policy for the property at issue in order to provide [d]efendant with notice of the loss." (Doc. 40-3, at 1).[5] Bray does not appear to have been a representative of defendant and did not work for defendant. Bigfoot's owner and Bray corresponded through text messages, discussing how to obtain the insurance policies from defendant, and discussing the difficulties Bray was having in acquiring the policies. (*See* Doc. 40-4, at 4–5, 8–18). The earliest of the text messages in the summary judgment record are time-stamped December 20, 2022. (*Id.*, at 8–9).[6] Other text messages in the record between plaintiffs and Bray, discussing attempts to acquire the policies, are time-stamped in mid-April and throughout May. (*Id.*, at 10–18). The date on the April and May texts do not include a year, but it appears from context they are from 2023. There is also some email communication in the summary judgment record involving Bigfoot, Ms. Bray, and what appears to be a roofer, discussing the property damage, with the earliest of the emails in the conversation dated November 9, 2022. (*Id.*, at 6–7). Ultimately, the parties agree that plaintiffs first notified defendant of the claim on April 1, 2023, about 20 months after the loss occurred. (Docs. 27-2, at 2; 40-2, at 1).

_____

[5] Defendant responds to both of plaintiffs' statements of additional material facts with objections concerning materiality, hearsay issues, lack of evidentiary support, and authentication issues. (*See* Doc. 60-1). Although some of defendant's objections are likely valid, the Court need not address them due to the Court's ultimate holding even considering plaintiffs' additional statements of fact and appendix material.

[6] There is also a text message, which appears to be unrelated to this case, time-stamped January 10, 2023. (Doc. 40-4, at 9).

On May 11, 2023, Randy Van Winkle inspected the properties. (Doc. 27-2, at 3). Van Winkle is a licensed professional engineer in Iowa who it appears was hired by defendant to conduct the inspections. (*Id.*, at 2). On May 23, 2023, Van Winkle inspected the properties for a second time. (*Id.*, at 3). On June 9, 2023, defendant sent Bigfoot a reservation of rights letter, noting in particular the "prompt notice" requirement in plaintiffs' insurance policy, which is excerpted in the Policy section above. (*Id.*).

On June 12, 2023, Bigfoot's representative completed inspections on the properties. (*Id.*). On June 13, 2023, Bigfoot sent defendant a sworn proof of loss for the alleged hail damage from the storm on August 9 or 10, 2021. (*Id.*). The proof of loss covers the seven apartment buildings and two storage buildings at issue in this litigation. (*Id.*). Plaintiffs claim damages in the proof of loss of slightly over $7 million, and plaintiffs claim the actual cash value of the claim less deductibles is slightly under $7 million. (*Id.*).

On June 19, 2023, defendant sent Bigfoot a letter stating that defendant was "unable to accept or reject" the proof of loss because defendant needed additional time to complete its investigation. (*Id.*, at 4). On July 12, 2023, Van Winkle—the engineer who inspected the properties for defendant—sent defendant a 266 page report about the property damage and plaintiffs' claim. (*Id.*).

On July 21, 2023, Bigfoot filed its state court petition, and later Pinnacle was added as a second plaintiff, as it appears Bigfoot assigned its claim to Pinnacle at some point.

Defendant's claim adjuster handling plaintiffs' claim intended to conduct an examination under oath of a representative for Bigfoot about the claim, but Bigfoot filed this lawsuit before any examination could occur.[7]

---

[7] Plaintiffs deny defendant's statement of fact on this front. (Doc. 40-2, at 1). Plaintiffs state they did not receive notice of defendant's representative's intention to take an examination under

### B.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citing *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50 (internal citations omitted), does not make an issue of fact genuine. In

---

oath. (*Id.*). But plaintiffs do not support this statement with any citation to the summary judgment record as is required. *See* Fed. R. Civ. P. 56(c). Defendant's statement of fact is supported by an affidavit by its representative who was handling plaintiffs' claim. (Doc. 27-3, at 109).

sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp.*, 477 U.S. at 323). The plaintiff may not then simply point to allegations made in its complaint, but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

### C.    Analysis

Defendant moves for summary judgment on plaintiffs' breach of contract claim. To prevail on a breach of contract claim under Iowa law, a plaintiff must show:

> (1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular

way, and (5) that plaintiff has suffered damages as a result of defendant's breach.

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)); *see also Hawkeye Drive, LLC v. Selective Ins. Co. of the Se.*, No. 22-CV-81-CJW-MAR, 2023 WL 8027830, at *5 (N.D. Iowa Nov. 20, 2023). In short, "[a] party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract." *Molo Oil Co.*, 578 N.W.2d at 224.

"Insurance policies are contracts between the insurer and the insured and must be interpreted like other contracts, the object being to ascertain the intent of the parties." *Jones v. State Farm Mut. Auto. Ins. Co.*, 760 N.W.2d 186, 188 (Iowa 2008) (quoting *Talen v. Emps. Mut. Cas. Co.*, 703 N.W.2d 395, 407 (Iowa 2005)). Absent ambiguity, courts "determine the intent of the parties by looking at what the policy itself says." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015) (internal quotation marks omitted). Courts do not "strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Id.* (quoting *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501 (Iowa 2013)).

"When a notice provision is written as a condition precedent to policy coverage, substantial compliance with such a condition must be shown by the insured." *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999). If the insured cannot prove substantial compliance with the condition, then the insured must show that the failure was excused, that the condition's requirements were waived, or that the failure to comply was not prejudicial to the insurer. *Id.* at 757. If the insured does not show substantial compliance, excuse, or waiver, then prejudice to the insurer is presumed. *Id.*

20

The prejudice presumption can be rebutted by a "satisfactory showing of lack of prejudice." *Id.*

Here, the parties argue about whether plaintiffs substantially complied with the policy's notice requirement, and if not, whether it caused prejudice to defendant. Plaintiffs do not make any excuse or waiver arguments. Also, defendant argues that the notice provision in the policy is a condition precedent to bringing suit, and plaintiffs do not respond to this argument. (*See* Docs. 27-1, at 5; 40-1). Thus, the first issue is whether plaintiffs substantially complied with the notice provision in the policy. If plaintiffs did not substantially comply with the condition, then the second issue is whether plaintiffs' failure to comply was prejudicial to defendant.

### 1. Substantial Compliance with Notice Provision

As noted above, the notice provision in the policy states that, in the event of loss or damage, plaintiffs must "give [defendant] prompt notice of the loss or damage" including a description of the property involved. (Doc. 27-2, at 1). The damage here occurred on August 9 or 10, 2021. Plaintiffs notified defendant of the damage on April 1, 2023. Thus, plaintiffs gave defendant notice of the damage almost twenty months after the damage occurred. That was not prompt notice.

In *Henderson v. Hawkeye-Security Insurance Co.*, 106 N.W.2d 86 (Iowa 1960), the insured, who was injured in a car accident, notified their insurer of the damage about thirteen months after the injury. The policy at issue required the insured to notify the insurer "as soon as practicable" after the injury. *Id.* at 107. The court held that "[o]ver twelve months' delay was a breach" of the notice provision in the policy. *Id.*

In *Bruns v. Hartford Accident and Indemnity Co.*, 407 N.W.2d 576 (Iowa 1987), the insured got into a car accident and the person in the other car sued the insured. The insured notified the insurer of the collision twenty-eight months after it occurred, requesting that the insurer defend and indemnify the insured. *Id.* at 577. The policy

required as a condition precedent to coverage that the insured notify the insurer "as soon as possible" after an injury. *Id.* at 578–79. The court held that the plaintiff's twenty-eight month delay did not substantially comply with the notice condition and did not constitute a prompt notification. *Id.* at 580. *See also Mich. Millers Mut. Ins. Co. v. Asoyia, Inc.*, Case No.: 3:11-cv-00006-CFB, 2013 WL 11616466, at *6–7 (S.D. Iowa Nov. 6, 2013) (insured's claim filed about twenty-three months after the damage occurred failed as a matter of law to substantially comply with notice provision).

The lapse of time here is similar to those in *Henderson*, *Bruns*, and *Michigan Millers*. Specifically, the almost twenty month delay is longer than the twelve month delay in *Henderson*, and quite close to the twenty-three month delay involved in *Michigan Millers*. Those courts concluded, almost summarily, that the delays in notice did not substantially comply with the notice condition. *See Henderson*, 106 N.W.2d at 107; *Mich. Millers*, 2013 WL 11616466, at *7. The provision at issue here, requiring "prompt notice," is also materially similar to those at issue in the cited cases.

Plaintiffs attempt to distinguish the cases defendant relies on by noting that the insurance claims at issue in the cases concern different types of losses. For example, plaintiffs point out that *Henderson* and *Bruns* were vehicle coverage cases, and *Michigan Millers* involved the insured claiming that the insurer had a duty to defend the insured in an underlying lawsuit. (Doc. 40-1, at 7–8). Plaintiffs conclude this argument by stating that "none of [d]efendant's cases are on point regarding the motion at issue." (*Id.*, at 8).

Plaintiffs do not explain why these slight factual differences matter for the purposes of the notice issue, though. Plaintiffs also do not point to any cases with a similar delay in notice where a court held that notice was timely. Thus, the caselaw points the Court towards defendant's argument on this issue.

22

Plaintiffs also argue that surrounding circumstances and facts should be considered within this analysis.[8] Plaintiffs point principally to the delay caused by Bray, plaintiffs' insurance agent, as the unique fact showing that plaintiffs' notice to defendant substantially complied with the policy condition. Plaintiffs claim, without citing any evidentiary materials in support,[9] that they corresponded with Bray consistently between the date of the storm and the date defendant was notified of the claim, and that Bray "continually delayed in the production of the Policy until it was finally produced" to plaintiffs. (Doc. 40-3, at 1). There are several problems with this argument. First, Bray is not a representative of defendant—in fact, she is more likely plaintiffs' agent. *See Fireman's Fund Ins. Co. v. ACC Chem. Co.*, 538 N.W.2d 259, 264 (Iowa 1995) ("[O]rdinarily a broker is deemed to be an agent of the insured, not the insurance company."). Thus, any delay caused by Bray does not save plaintiffs' delayed notice here. Even assuming plaintiffs should be afforded some leeway because of delays caused by Bray, however, this leeway does not extend for twenty months, especially considering plaintiffs point to no evidence showing that they reached out to Bray until over a year after the alleged damage occurred. Plaintiffs' argument on this front fails.

Thus, plaintiffs' almost twenty month delay in notifying defendant of the damage does not substantially comply with the notice condition in the policy. The only remaining issue, then, is whether defendant was prejudiced by this delay.

---

[8] Plaintiffs cite an Eighth Circuit Court of Appeals case for this proposition. (Doc. 40-1, at 5–6) (citing *Kimbrell v. Union Standard Ins. Co.*, 207 F.3d 535, 537 (8th Cir. 2000)). The case was decided under Arkansas law, and plaintiffs have not pointed to any Iowa authority standing for the same proposition. Whether notice was prompt, however, almost necessarily includes consideration of surrounding facts and circumstances, so the Court considers it here.

[9] *See* Local Rule 56(b).

## 2. *Prejudice to Defendant*

When the insured has not substantially complied with a notice condition, and the condition has not been waived or excused, prejudice to the insurer is presumed. *Henderson*, 106 N.W.2d at 92. This presumption is rebuttable, and the insured can rebut the presumption of prejudice "by a satisfactory showing of lack of prejudice." *Interstate Power Co.*, 603 N.W.2d at 757. If the presumption of prejudice is not overcome by the insured, "it will defeat the insured's recovery." *Met-Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 654 (Iowa 1994).

Plaintiffs rest their argument here on the fact that they submitted a sworn proof of loss to defendant on June 7, 2023, which was 44 days before they filed suit. (Doc. 40-1, at 8–9). Plaintiffs argue that submitting the proof of loss triggered a duty for defendant to conduct an investigation and provide plaintiffs with a written acceptance or denial of the claim within 30 days, or to notify plaintiffs within 30 days of the reasons why more time is needed to investigate the claim, citing an Iowa regulation in support. *See* Iowa Admin. Code r. 191-15.41(3). Plaintiffs point out that they submitted the proof of loss to defendant 44 days before they filed suit, reasoning that this gave defendant enough time to investigate the claim under the regulation. Defendant sent plaintiffs a letter stating defendant needed more time to investigate, but did not provide a reason for needing more time. Plaintiffs argue that, because defendant did not comply with the regulation by failing to notify plaintiffs of the reason why defendant needed more time, the letter "falls short of the requirements for a request for additional time." (Doc. 40-1, at 9). Ultimately, plaintiffs argue that, because they provided defendant with a sworn proof of loss more than 30 days prior to filing suit, defendant is precluded from arguing that it was prejudiced by plaintiffs' actions. (*Id.*).

Defendant argues that plaintiffs' delay in notifying defendant of the damages impeded defendant's ability to investigate the claim adequately. (Doc. 27-1, at 7–8).

Defendant argues that plaintiffs' argument focuses on the wrong facts. That is, defendant asserts that the prejudice had already occurred when plaintiffs notified defendant of the claim. (Doc. 60, at 5). Defendant's principle argument is that the delay made it difficult for defendant to investigate the wind and hail damage, particularly in determining the connection between the damage and a specific storm. Thus, plaintiffs' focus on the time period between plaintiffs' notifying defendant of the claim and filing suit is misplaced, according to defendant, because the prejudice occurred through the time lapse between the damage and notification—not in the time between notification and filing suit. Defendant argues that determining whether the damage is truly a covered loss under the policy is more difficult when it cannot investigate the situation relatively quickly after the damage occurs. Defendant's inspector stated that he prefers to investigate hail and wind damage within a year of the damage occurring, for example. (Doc. 27-3, at 85–86). Thus, at base, defendant argues it was prejudiced by plaintiffs' delayed notification because the delay created issues with the accuracy of claim investigation.

The analysis must kick off by noting that prejudice to defendant is presumed, and plaintiffs must rebut this presumption "by a satisfactory showing of lack of prejudice." *Interstate Power Co.*, 603 N.W.2d at 757. Plaintiffs have failed to rebut the presumption. Plaintiffs' argument here is of little relevance concerning the prejudice issue. The issue is whether defendant was prejudiced by plaintiffs waiting almost twenty months to notify defendant of the damage. The fact that defendant did not explain to plaintiffs why defendant needed more time to investigate the claim has little, if any, bearing on this issue. The fact that plaintiffs filed suit against defendant 44 days after submitting their sworn proof of loss also has little, if any, bearing on this issue. The prejudice to defendant occurs because of the delay in notice and how it affects defendant's ability to investigate the claim, not because of events which occurred after plaintiffs notified defendant of the damage. Plaintiffs have pointed to essentially nothing that would

generate a genuine issue of material fact supporting their claim that defendant was not prejudiced by the delayed notice. Plaintiffs have not carried their burden here.

Because plaintiffs have not rebutted the presumption that defendant was prejudiced by plaintiffs' delay in notifying defendant of the alleged damages, defendant must prevail on this issue as a matter of law.

### D. *Summation of Motion for Summary Judgment*

For these reasons, defendant's motion for summary judgment is **granted**, and plaintiffs' breach of contract claim is **dismissed**.

## IV. CONCLUSION

For these reasons, the Court **grants** defendant's motion to dismiss. (Doc. 62). Plaintiffs' unfair settlement practices and fraud claims are **dismissed**.

The Court **grants** defendant's motion for summary judgment. (Doc. 27). Plaintiffs' breach of contract claim is **dismissed**. This case is dismissed in its entirety.

**IT IS SO ORDERED** this 16th day of July, 2024.

_____

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa